# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BIO-MEDICAL APPLICATIONS OF ILLINOIS, INC.,<br><br>      Plaintiff,<br><br>vs.<br><br>CITY OF WEST FRANKFORT, CITY OF WEST FRANKFORT EMPLOYEE BENEFIT PLAN, AND KEY BENEFIT ADMINISTRATORS, INC.,<br><br>      Defendants. | Case No. 3:21-cv-487 |
| KEY BENEFIT ADMINISTRATORS, INC.,<br><br>      Counterclaim Plaintiff,<br><br>vs.<br><br>BIO-MEDICAL APPLICATIONS OF ILLINOIS, INC.,<br><br>      Counterclaim Defendant. | |
| KEY BENEFIT ADMINISTRATORS, INC.,<br><br>      Third-Party Plaintiff,<br><br>vs.<br><br>HEALTHLINK, INC. and GOLDEN TRIANGLE SPECIALTY NETWORK, LLC,<br><br>      Third-Party Defendants. | |
| GOLDEN TRIANGLE SPECIALTY NETWORK, LLC,<br><br>      Counterclaim Plaintiff,<br><br>vs.<br><br>KEY BENEFIT ADMINISTRATORS, INC.,<br><br>      Counterclaim Defendant. | |

CITY OF WEST FRANKFORT,

   Counterclaim Plaintiff,

   vs.

BIO-MEDICAL APPLICATIONS OF ILLINOIS, INC.,

   Counterclaim Defendant.

# MEMORANDUM AND ORDER

## I. Introduction

  This matter comes before the Court on three motions: City of West Frankfort Employee Benefit Plan ("Plan") motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), City of West Frankfort ("City") motion to strike prayer for relief in Bio-Medical Applications of Illinois, Inc.'s ("BMA") Complaint and strike prayer for attorneys' fees pursuant to Rule 12(f), and Third-Party Defendant HealthLink, Inc. ("HealthLink") motion to dismiss Third-Party Complaint of Defendant Key Benefit Administrators, Inc. ("KBA") pursuant to Rule 12(b)(6). These motions are at Doc. 80, 81 and 89, respectively.

## II. Factual Background

  This is a breach of contract case that was originally filed in Williamson County, Illinois. BMA, a provider of dialysis treatment, claims the defendants breached a contract by failing to pay them at the agreed rate for treatment they provided to patients who are covered by the City's health insurance plan. The core of this case is who owes payments owed for kidney dialysis treatments provided to a patient.[1]

---

[1] The parties' roles are as follows: BMA is a provider of dialysis treatment for the Patient, the City established a government health plan for the Patient, the Plan is the health benefit plan sponsored by the City, and KBA has a contract with the City to provide administrative services for the Plan. BMA and KBA negotiated the Treatment Agreement for the City and Plan for BMA to provide regular dialysis services for the Patient. BMA was allegedly "in network" with HealthLink pursuant to the ASA. Pursuant to the TPPA between KBA and HealthLink, KBA, the

The City established and administered a health plan for the benefit of eligible employees and their dependents. Compl. ¶ 2. The City, as Plan Administrator for its health plan, is a fiduciary with discretionary authority to administer the plan. The Plan is a health benefit plan sponsored by the City to provide medical benefits for the City's employees and their dependents, including the patient whose claims are at issue in this case ("Patient"). Compl. ¶ 3. KBA has a contract with the City to provide administrative services for the Plan wherein it had responsibilities to process, pay claims, and administer reimbursement contracts with health care providers. BMA is a medical service provider that provides dialysis treatments from patients who suffer from kidney disease. *Id*.

According to the Complaint, in connection with the Patient's regular kidney treatments with BMA, KBA negotiated a "Treatment Agreement" for the City and Plan whereby BMA would provide regular dialysis services (3-4 times per week) to the Patient and, in return, BMA would be paid a negotiated rate that represented a discount off of BMA's standard billed charges. Compl. ¶¶ 7–8, 10–11, 13, 15. The Complaint alleges that KBA executed the Treatment Agreement. The Complaint alleges defendants initially complied with the Treatment Agreement, and made several payments at the Treatment Agreement's prescribed rate. Compl. ¶ 24.

BMA alleges that the City, Plan, and KBA failed to pay BMA as required by the Treatment Agreement for all services BMA rendered to the Patient from October 24, 2016, through May 31, 2019. BMA alleges that due to the City, Plan, and KBA's breach of the Treatment Agreement, payment of 100% of BMA's billed charges is due. This amounts to at least $4 million under the Treatment Agreement. BMA filed the original complaint in this Court owed by KBA, the City, and Plan under the Treatment Agreement. On May 14, 2021, KBA

---

City and Plan were entitled to benefits of BMA being "in network." Golden Triangle acted as a broker of sorts in negotiating the terms of the Treatment Agreement.

removed this action to federal court alleging breach of contract by all defendants, and, in the alternative, breach of implied contract by all defendants.

Separately, BMA was allegedly "in network" with HealthLink pursuant to an Ancillary Services Agreement ("ASA") between BMA and HealthLink. Doc. 59 at ¶ 15, 55. KBA, the City, and the Plan gained access to HealthLink provider network and therefore were entitled to the benefits of BMA being in network with HealthLink pursuant to a Third-Party Administrator Agreement ("TPPA") between KBA and HealthLink. Doc. 59 at ¶ 20. 25-26. Although KBA, the City, and the Plan had discounted rates from BMA based on the TPAA, the Third-Party Complaint alleges that KBA confusingly entered into the separate Treatment Agreement with BMA and Golden Triangle Specialty Network, LLC ("Golden Triangle"). However, the discount rate agreed to by BMA and KBA (on behalf of the City and Plan), in the Treatment Agreement, is higher than the discounted rate provided for in the ASA between BMA and HealthLink. (Doc. 59 at ¶ 49).

KBA contends the Treatment Agreement is invalid and thus ASA should control (Doc. 36). In its Third-Party Complaint, KBA raises various allegations directed to HealthLink and Golden Triangle, whereby the latter alleged to act as a broker of sorts in negotiating the terms of the Treatment Agreement. KBA filed its Third Party Complaint against HealthLink and Golden Triangle as follows: breach of contract against HealthLink for breaching TPAA between KBA and HealthLink, negligent misrepresentation against HealthLink for misrepresenting to KBA that "BMA was not in the HealthLink Network," indemnification against HealthLink for amounts to which BMA entitled above the ASA rate pursuant to the Treatment Agreement, breach of contract against Golden Triangle, negligent misrepresentation against Golden Triangle, and indemnification against Golden Triangle. (Doc. 59).

On December 30, 2021, the City filed a Third-Party Complaint against KBA as follows: breach of contract, indemnity, and implied indemnity. (Doc. 102).[2]

**III.    Analysis**

A Rule 12(b)(6) motion challenges the "sufficiency of the complaint." *Berger v. Nat. Collegiate Athletic Assoc.*, 843 F.3d 285, 289 (7th Cir. 2016). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Boucher v. Fin. Sys. of Green Bay, Inc.*, 880 F.3d 362, 366 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937). The plaintiff "must do more in the complaint than simply recite the elements of a claim." *Zellner v. Herrick*, 639 F.3d 371, 378 (7th Cir. 2011). Complaints that offer "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

---

[2] For ease, the following pleadings referred to this complaint are as follows: Doc. 1 is the Complaint (Compl.); Doc. 36 is KBA's Answer to the Complaint and Counterclaim against BMA; Doc. 59 is KBA's Third-Party Complaint against HealthLink and Golden Triangle; Doc. 80 is the City and Plan's Motion to Dismiss; Doc. 81 is the City's Motion to Strike; Doc. 89 is HealthLink's Motion to Dismiss KBA's Third-Party Complaint.

"When ruling on a motion to dismiss, the court may consider 'documents attached to the complaint, documents central to the complaint and referred to in it, and information that is properly subject to judicial notice.'" *Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 493 n.1 (7th Cir. 2017) (cleaned up). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Tobey v. Chibucos*, 890 F.3d 634, 646 (7th Cir. 2018).

Regarding a motion to strike pursuant to Rule 12(f), a Court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f); *Delta Consulting Group, Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009). Motions to strike are disfavored, however, and will generally be denied unless the portion of the pleading at issue is prejudicial. *Heller v. Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir.1989); *Tektel, Inc. v. Maier*, 813 F.Supp. 1331, 1334 (N.D.Ill. 1992) ("Motions to strike under Federal Rule 12(f) are not favored, and are usually denied unless the language in the pleading has no possible relation to the controversy and is clearly prejudicial."). Prejudice results, for instance, where the challenged allegation has the effect of confusing the issues or is so lengthy and complex that it places an undue burden on the responding party. *Cumis Ins. Soc., Inc. v. Peters*, 983 F.Supp. 787, 798 (N.D.Ill. 1997). The determination whether to strike material under Rule 12(f) is within the discretion of the trial court. *Talbot v. Robert Matthews Distributing Co.*, 961 F.2d 654, 664 (7th Cir. 1992).

    a.  **Motion to Dismiss on Behalf of the Plan**

Defendant City of West Frankfort Employee Benefit Plan, as defined above as the Plan, moves to dismiss under Rule 12(b)(6). The Plan argues that the Complaint should be dismissed against the Plan because the Plan is not a legal entity capable of being sued (Doc. 80 at 2).

Because the City is a municipality, it is exempt from the statutory scheme outlined in ERISA. [3]

Specifically, the Plan states that the Complaint does not allege how the Plan could be a separate legal entity apart from the City and is not a legal entity under Illinois law.

Under Illinois law, the legislature authorized the City to establish insurance healthcare plans for eligible employees and their dependents.

> (a) The corporate authorities of any municipality may arrange to provide, for the benefit of employees of the municipality, group life, health, accident, hospital, and medical insurance, or any one or any combination of those types of insurance, and may arrange to provide that insurance for the benefit of the spouses or dependents of those employees.

65 ILCS 5/10-4-2. The Plan argues that nothing in this section indicate a city insurance healthcare plan is a separate legal creature capable of being sued. (Doc. 80 at 2). Plaintiff argues "the converse is also true" that the "statute does not *prohibit* the City from establishing the Plan as a separate legal entity." The question before this Court is simple – is the Plan a part of the municipality or is it its own legal entity capable of being sued?

The Plan cites many cases, but initially cite *Richardson* to support their proposition a government plan cannot be sued as a separate defendant. In *Richardson*, the Illinois court held that the board of the hospital and the hospital are separate entities and the board cannot be sued as a separate entity. *Richardson* looked at 55 ILCS 5/5/1-1004 which outlined the powers of the county board. *Richardson v. Cnty. of Cook*, 250 Ill. App. 3d 544, 547, 621 N.E.2d 114, 116 (1993) ("we note that the Board and the hospital have been improperly named as defendants in this case. The Board is not a separate entity which can be sued. Rather, its powers are co-

---

[3] The Plan argues that while a plan under the Employee Retirement Income Security Act ("ERISA") is a separate entity that *can* be sued, BMA sued the Plan separately under breach of contract instead of under ERISA knowing that it could not be used as a government plan (Doc. 80 at 3); *see also Nw. Mem'l Hosp. v. Vill. of S. Chicago Heights Health & Welfare Fund*, No. 03 C 4006, 2004 WL 1687057, at *3 (N.D. Ill. July 27, 2004) (dismissing claim based on ERISA because the plan was a government plan).

extensive with the County"); 55 ILCS 5/5–1004 (West 1992) ("[t]he powers of the county * * * shall be exercised by a county board"). The Illinois statute in the instant case states:

> The corporate authorities may exercise the powers granted in this Section only if the kinds of group insurance are obtained from an insurance company authorized to do business in the State of Illinois, or are obtained through an intergovernmental joint self-insurance pool as authorized under the Intergovernmental Cooperation Act. The corporate authorities may enact an ordinance prescribing the method of operation of the insurance program.

65 ILCS 5/10-4-2(d). The statutes here are similar – the statutes both grant the municipality discretion to exercise their authority to effectuate their purpose. However, *Richardson* involved a separate state statute, and it did not involve a health plan. Understanding that health plans may have distinct legal qualities, as explained more fully below, the Court will let this case past the motion to dismiss stage.

The Plan notes that there is substantial precedent for the proposition that an entity with no independent legal or corporate identity cannot be considered a legal person and cannot be sued. (Doc. 80 at 4). These cases note that the following are not legal entities separate from the municipality: athletic department from university, Chicago Fire Department from city, Department of Streets and Sanitation from city, and county corporation counsel's office from county. *Id*. at 4-5;[4] *Peirick v. Indiana University*, 510 F .3d 681, 694 (7th Cir. 2007); *Stevanovic v. City of Chicago*, 385 Ill.App.3d 630, 631 (2008); *Dr. Martin Luther King, Jr., Movement, Inc.*

---

[4] The Court additionally notes there is *extensive* caselaw regarding the type of offices and departments that not legal entities separate from the government or municipality. *In Jacobs v. Port Neches Police Dep't*, 915 F.Supp. 842 (E.D.Tex. 1996), the court held that the Jefferson County District Attorney's Office "is not a legal entity capable of suing or being sued." Similarly, in *Darby v. Pasadena Police Dep't*, 939 F.2d 311 (5th Cir.1991), the court held that "unless the true political entity has taken explicit steps to grant the servient agency with jural authority, the agency cannot engage in any litigation except in concert with the government itself." *Id*. at 312; *see also Revene v. Charles County Comm'rs*, 882 F.2d 870, 874 (4th Cir. 1989) ("Office of Sheriff" not a cognizable legal entity separate from the Sheriff in his official capacity and the county government of which the "office" is simply an agency*); Hancock v. Washtenaw County Prosecutor's Office*, 548 F.Supp. 1255 (E.D. Mich. 1982) (prosecutor's office not a legal entity amenable to suit under § 1983); *In re Scott County Master Docket*, 672 F.Supp. 1152 (D.Minn. 1987) (same as to county attorney and sheriff's offices).

*v. City of Chicago*, 435 F.Supp. 1289, 1294 (N.D. IL 1977); *Tate v. Milwaukee County Sheriff's Dept.*, No. 08-c-1095, 2008 WL 5423984 (E.D. Wis. 2008).  However, many of these cases concern claims against municipal departments or buildings by municipalities. The Plan states that the Plan is similarly not a legal entity and is co-extensive of the City. Giving all reasonable inferences in favor of Plaintiff, the Court agrees that these cases refer to departments or mere extensions of the department. Giving all reasonable inferences in favor of Plaintiff, the Court believes the same setup is not present here.

First, the Court does not find, and the parties do not cite, a case either within this circuit or in Illinois that guides this court regarding *municipal health plans*. While the Court understands that there is an *extensive* list of departments and entities that are not considered separate legal entities, the Court cannot point to a case that treats plans as co-extensive with the municipality for government health plans. The Court is not willing to extend the same logic to all municipal-related entities.

Plaintiff notes that governing Plan document establishes the Plan and expressly states the Plan "is a legal entity" that can be sued with "legal process served upon the plan administrator." Doc. 91, Ex. 1 at 71. The Court is able to consider this document as it is central to the complaint is referenced in the Complaint. *Amin Ijbara Equity Corp.*, 860 F.3d at 493 n.1. The Plan states that such a declaration in a document, does not make it so. The Court disagrees that this should be the "beginning and end of the matter." (Doc. 91 at 5). While the Court generally agrees, in the absence of clear case law stating that a government health care plan in Illinois is not separate from the city, the Court must give this inference in favor of the Plaintiff.

While a case regarding FOIA requests is not cited by the parties, the Court finds the case of *Better Government Association* helpful. *Better Gov't Ass'n v. Illinois High Sch. Ass'n*, 2016 IL

App (1st) 151356, ¶ 23, 56 N.E.3d 497, 503, aff'd, 2017 IL 121124, ¶ 23, 89 N.E.3d 376. The Illinois court looked at a variety of factors to determine whether Illinois High School Association was independently and legally separate from its member schools. *Id*.

> IHSA is an established 501(c)(3) charitable organization recognized by the Internal Revenue Service as a separate legal entity that files its own tax returns and has its own federal employer identification number. Additionally, IHSA maintains its own employees for whom it withholds payroll taxes and issues W–2 tax forms annually. IHSA also owns the building in which its offices are housed. These factors demonstrate that IHSA has a separate legal existence, independent from its member schools or any other public body, which BGA conceded at oral argument in this case.

*Id*. While Illinois statute allowed a voluntary association to sue and be sued in its own name, the Court finds these factors helpful. If the Plan is able to clearly show that the Plan is a separate legal entity, the Court can dismiss at a summary judgment phase.

  The Court understands that this is a government municipal plan exempt from ERISA. However, the Court looks to private employer health plans to see why health plans are generally distinct from employers or other parties that sponsor group health plans. Employers *generally* will sponsor health plans for employees. While it is common for an employer to think of a health plan as more than an extension of itself, the health plan is in fact a legal entity that is separate and distinct from the sponsoring employer. For example, a plan could, have assets, offices, contracts, employees. Such a failure to observe this distinction runs the risk of running afoul to privacy requirements of employees. While Plaintiff did not make this argument, the Court is careful to dismiss the Plan at this time in light of the medical and privacy information involved in the litigation. In the absence of a state statute that prohibits the Plan from being sued, the presence of the Plan document which calls for the Plan to be its separate legal entity, the Court will allow the Complaint against the Plan to proceed at this stage.

  The Court has reviewed the four cases cited by Plaintiff to support the proposition that

benefit plans are capable of being sued. While the Court agrees these cases are distinguishable and none are directly on point with the issue in this case, the Court sees these cases as instances where the Court allowed a health plan (or pension fund) to be a named defendant during the pendency of action. In the absence of a case cited by the Plan that affirmatively dismisses a health plan as a named defendant in Illinois, the Court finds these cases helpful. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584 (7th Cir. 1993) (retired police association suing four pension funds); *Matthews v. Chicago Transit Auth.*, 2016 IL 117638, ¶ 104, 51 N.E.3d 753, 782 (affirming that plaintiffs "stated a cause of action for breach of contract against the Plan and Trust defendants."); *Mansfield v. Chicago Park Dist. Grp. Plan*, 946 F. Supp. 586, 590 (N.D. Ill. 1996) (dismissing all non-ERISA portions claims of Count I and allowing Public Health Security Act claims in beneficiary action against city park district and district's health plan in a motion to dismiss phase). Additionally, at the summary judgment phase, the district court determined whether triable issues existed with continuation of medical benefits under employer's health plan after retirement after the plaintiff employee. the Chicago Park District Group Plan and the Chicago Park District were both parties at the summary judgment phase. *Mansfield v. Chicago Park Dist. Grp. Plan*, 997 F. Supp. 1053 (N.D. Ill. 1998).

      The Plan argues that Plaintiff's failure to allege the Plan is a trust is detrimental. (Doc. 80 at 5-6). Since the Court is not construing the Complaint as naming the Plan as a trust at this time the Court does not find this argument detrimental to Plaintiff's case.

      Additionally, Plaintiff argues in a footnote that the City and Plan are estopped from denying the validity of the Treatment Agreement because they accepted its benefits. (Doc. 91 at 10). Because the Court will allow the Plan to move forward as a Defendant for now, the Court need not evaluate Plaintiff's estoppel argument.

The Court hereby DENIES the Plan's Motion to Dismiss (Doc. 80).

### b. Motion to Strike

The City moves to strike BMA's Complaint and to strike the prayer for attorneys' fees in the Complaint.

The City first argues that the purpose of the last section of the Treatment Agreement, reproduced below, is to enforce performance by making such performance unlawful.

> However, notwithstanding these rate terms, in the event of a breach of the Agreement by PAYOR, PAYOR shall be obligated to pay PROVIDER 100% of PROVIDER'S full (non-discounted) billed charges from the date of the breach through the remainder of the Term of the Agreement.

Treatment Agreement, p. 1; Doc. 81 at 2-3. The term of the Treatment Agreement was for 30 months. Thus, the City argues that that any time during the 30-month term, any overdue amount constituted a breach and would entitle BMA to its enhanced 100% billed rate for the rest of the contract term. Thus, the City states that a contract term fixing unreasonably large damages for a breach of contract is unenforceable as a penalty on public policy grounds. *Id*. at 3. Plaintiff argues the City's allegations that the failure to pay are too high or attorneys' fees are not available are improper at a Rule 12(f) stage. (Doc. 84 at 3). In short, Plaintiff disagrees with the City's interpretation over the damages section in the Treatment Agreement.

The Court agrees that where the parties disagree on the question of appropriate damages and where the Court would be required to conduct contract interpretation, a dismissal based on a Rule 12(f) is inappropriate at this stage and premature. *Ronald McDonald House Charities of Chicagoland & Nw. Indiana, Inc. v. Winning Charities Illinois, LLC*, No. 13 CV 1430, 2014 WL 1480750, at *3 (N.D. Ill. Mar. 24, 2014) (striking WCI's request for liquidated damages at this stage of the litigation because the parties have expressed opposing views on question of appropriate damages); *Cent. Dupage Health v. 3M Co.*, No. 05 C 0241, 2005 WL 2848396, at *4

(N.D.Ill. Oct. 26, 2005) (denying a motion to strike damages at the motion to dismiss stage of the litigation as premature because it required contract interpretation); *see also Simenson v. Hoffman*, No. 95 C 1401, 1995 WL 631804, at *7 (N.D. Ill. Oct. 24, 1995).

The City also argues that the Treatment Agreement damages provision is unenforceable on public policy grounds. In Illinois, a liquidated damages clause is valid and enforceable when: "(1) the actual damages from a breach are difficult to measure at the time the contract was made; and (2) the specified amount of damages is reasonable in light of the anticipated or actual loss caused by the breach." *Energy Plus Consulting, LLC v. Illinois Fuel Co., LLC*, 371 F.3d 907, 909 (7th Cir. 2004) (affirming district court's order that damages provision is an unenforceable penalty during a summary judgment phase). However, there is no fixed rule applicable to all liquidated damages provisions and "must be evaluated on its own facts and circumstances." *Id.* (internal citations omitted). Plaintiff argues that this provision "removes the discount off of BMA's billed charges that would have otherwise applied. This is precisely how reimbursement in the health care industry operates." (Doc. 84 at 5).

At this stage, the Court will not strike Plaintiff's claims for damages. The parties currently disagree as to what is customary damages for a breach in this industry. It is improper for the Court to delve outside the allegations of the Complaint and into the individual facts and circumstances of this provision regarding what is customary in the health care industry at a Rule 12(f) stage. Such arguments are properly made at a summary judgment phase.

Additionally, the City requests this Court to strike Plaintiff's prayer for attorney's fees. The Court does not find that the request for attorney's fees to be prejudicial. Such arguments are "are more appropriately raised at the summary judgment stage." *Illinois Constructors Corp. v. Morency & Assocs., Inc.*, 802 F. Supp. 185, 190 (N.D. Ill. 1992) ("It is not unusual for a

complaint to make a request for attorney's fees in its prayer for relief. As a result, the motion to strike is premature in that later developments may justify a request for fees.").

Motions to strike are generally disfavored. The Court does not find that the language in the Complaint has no possible relation to the controversy and it is not clearly prejudicial. The Court hereby DENIES the City's Motion to Strike (Doc. 81).

### c. HealthLink's Motion to Dismiss

#### i. Failure to State a Claim for Breach of Contract

Third Party Defendant HealthLink moves to dismiss the Third-Party Complaint of Defendant/Third Party Plaintiff KBA pursuant to Rule 12(b)(6). (Doc. 89).

Under Illinois law, a plaintiff looking to state a colorable breach of contract claim must allege four elements: (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages. *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010).

First, HealthLink argues that KBA's Third-Party Complaint fails to state a claim for breach of contract as a matter of law. (Doc. 89 at ¶ 25). HealthLink argues that KBA does not actually plead a breach by HealthLink of any of its obligations under any of the following provisions of the TPAA – 3.3, 4.1, and 4.4. The Court will take each alleged breach in turn.

Section 3.3 of the TPAA obligated HealthLink to "contractually require a Participating Provider [BMA] to accept payments made to the Participating Provider in accordance with the Provider Rate Schedule…" Doc. 59 at ¶ 22. HealthLink argues that KBA's own pleadings establish HealthLink complied with its obligations under Section 3.3. KBA does not address this issue and it is deemed waived. *Jenkins v. Burkey*, 2017 WL 2687815, at *4 (S.D. Ill. June 22, 2017).

HealthLink argues section 4.1 and 4.4 obligate *other* parties to act and not Healthlink. Therefore, HealthLink did not breach the TPAA. Section 4.1 of the TPAA provided that the Participating Provider (BMA) "shall accept from Company [KBA] the amounts set forth in the Provider Rate Schedule…" (Doc. 59 at ¶ 22). HealthLink argues that this section imposed "no obligation on HealthLink." (Doc. 89 at ¶ 20). KBA states that "the fact that HealthLink's promises to KBA required action and cooperation by a third-party, namely BMA, does not excuse HealthLink from the effect of its promise that BMA **shall** submit claims to HealthLink and that BMA **shall** accept HealthLink's rates as payment in full." (Doc. 101 at 6-7). HealthLink's reply states that KBA's response attempts to make HealthLink strictly liable, as a guarantor, for BMA's alleged conduct. (Doc. 105 at 1-2).

Section 4.4 obligates HealthLink to "apply the applicable rate under the Provider Rate Schedule to the bill or claim submitted by the Participating Provider [BMA]." (Doc. 59 at ¶ 23). HealthLink argues that its obligations arise *only* if BMA first submitted a bill or claim to HealthLink. Later, KBA alleges "BMA has refused to submit all bills and claims for Patient's treatment to HealthLink for Covered Services." (Doc. 59 at ¶ 56).

KBA states that the fact HealthLink's promises to KBA required action and cooperation by a third party, BMA, "does not excuse HealthLink from the effect of its promise that BMA shall submit claims to HealthLink and that BMA shall accept HealthLink's rates as payment in full." Doc. 101 at 7. At this point, and giving all reasonable inferences in favor of KBA, the Court agrees. "If the promised performance can not be rendered without performance by the third party the promisor must take sufficient pains to induce such performance." *Ner Tamid Congregation of N. Town v. Krivoruchko*, 638 F. Supp. 2d 913, 930 (N.D. Ill. 2009), as amended (July 9, 2009); 6 A. Corbin, Contracts § 1340, at 405, 407 (1950). See also Annot. 84 A.L.R.2d

12, 31 (1962). *See also*; 6 Williston, Contracts § 1932 (Rev'd ed.). At this stage the Court is not willing to find based on the allegations of the Third-Party Complaint that the claim fails. HealthLink can provide evidence to the Court in the summary judgment phase that demonstrates HealthLink did not breach the TPAA.

HealthLink states that KBA does not plead any facts demonstrating how HealthLink's purported breaches of the TPAA caused KBA's alleged damages. (Doc. 89 at ¶ 22). Finding that there are sufficient allegations pled that demonstrate HealthLink could have induced action and cooperation of a third-party, KBA properly alleges damages.

The Court hereby **DENIES** HealthLink's Motion to Dismiss Count I for breach of Contract.

        ii.        **Failure to State a Claim for Negligent Misrepresentation**

HealthLink argues that KBA's negligent misrepresentation claim fails because KBA cannot establish that it relied on any alleged misrepresentation by HealthLink. Doc. 89 at ¶ 26. KBA's negligent misrepresentation is based on a misrepresentation made by HealthLink on November 2, 2016 regarding BMA"s in-network status. Doc. 59 at ¶ 65. KBA alleges it relied on the in-network status "when negotiating with BMA regarding rates and payments for services provided to Patient. Doc. 59 at ¶ 68. HealthLink argues that KBA's claim is based on a representation in November for the Treatment Agreement which was entered into with BMA in October of that year. (Doc. 89 at ¶¶ 27-29).

KBA argues 1) it pleads "on or about November 2" (not November 2 exactly) and, 2) it expressly denied that the Treatment Agreement was a valid and enforceable agreement. Additionally, KBA notes that it continued to discuss rates and negotiate with BMA after October 31 and into November after it received the information from HealthLink misrepresenting that

BMA was not in-network. (Doc. 101 at 14).

The Court has reviewed the allegations in the Third-Party Complaint and KBA makes no such allegations that that it was continuing to discuss rates and negotiate with BMA into November, after the alleged misrepresentation on or about November 2. *Sassak v. City of Park Ridge*, 431 F. Supp. 2d 810, 819 (N.D. Ill. 2006) ("Reliance depends on learning of the misrepresentation—one cannot rely on something one does not know."). KBA makes new arguments in its response and the Court cannot only rely on the allegations in the Third-Party Complaint at this stage. The Court only relies on the allegations in the Third-Party Complaint in assessing the sufficiency of the complaint. *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[A] complaint may not be amended by the briefs in opposition to a motion to dismiss").

The Court will not prohibit KBA from amending its pleading at this point, as HealthLink requests this Court.

The Court hereby **GRANTS** HealthLink's Motion to Dismiss Count II of KBA's claim for negligent misrepresentation.

### iii.     Failure to State a Claim for Indemnification

Next, HealthLink argues that because it believes it did not breach the TPAA, it cannot be required to defendant and indemnify KBA. (Doc. 105 at 4). Finding that KBA has alleged sufficient allegations to constitute breach under sections 4.1 and 4.4 of the TPAA, the Court will deny HealthLink's Motion to Dismiss the claim for indemnification at this stage. The Court does not consider any new arguments made by KBA in its opposition to the motion to dismiss and only looks at the allegations made in the Third-Party Complaint.

## IV.  CONCLUSION

The Court hereby:

- **DENIES** the Plan's Motion to Dismiss for Failure to State A Claim (Doc. 80);

- **DENIES** the City's Motion to Strike (Doc. 81);

- **DENIES IN PART GRANTS IN PART** HealthLink's Motion to Dismiss KBA's Third-Party Complaint (Doc. 89).


**IT IS SO ORDERED.**
**Dated: June 8, 2022**

                                                **/s/ J. Phil Gilbert**
                                                **J. PHIL GILBERT**
                                                **DISTRICT JUDGE**